722 A.2d 394

**Richard William NEWPHER**

v.

**STATE of Maryland.**

**No. 76, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Jan. 4, 1999.

Thomas G. Ross (Ross & Powell, on the brief), Centreville, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and David Weston Gregory, State's Atty. for Queen Anne's County, Centreville, on the brief), for appellee.

Argued before MOYLAN, SONNER and THEODORE G. BLOOM (retired, specially assigned), JJ.

SONNER, Judge.

This case arises from an increasingly routine law enforcement practice, that of requesting to search a vehicle whose driver has been stopped for a traffic offense. Here, a Queen Anne's County deputy sheriff, after completing a traffic citation for speeding, asked appellant whether he had any "guns or drugs" in his car, and after he received a negative reply, requested and allegedly received permission to conduct a search. The subsequent search revealed marijuana under the passenger's side floor mat and also in a tackle box inside the

trunk. Before trial, appellant filed a motion to suppress the fruits of the search in the circuit court, and after a hearing, the trial court denied it. After his conviction upon an agreed statement of facts and subsequent sentence, appellant noted this appeal and asks us to find that the trial court erred in concluding that he voluntarily consented to the search of his vehicle and that the search was in violation of his constitutional rights. We find no error and affirm.

In the late evening hours of March 3, 1997, Deputy First Class Michael Branham was working road patrol on the upper Eastern Shore in the small, quiet town of Sudlersville in Queen Anne's County. Appellant, Richard William Newpher, drove his jeep though the town at a speed that Deputy Branham detected as 41 miles per hour in a 25 mile per hour zone. Deputy Branham pulled Newpher over and, while talking to him, noticed an odor of alcohol and bloodshot eyes. Suspecting that Newpher might be under the influence of alcohol, he ordered him to perform the standard field sobriety tests, which Newpher passed without difficulty. Deputy Branham also properly advised Newpher and obtained his consent to perform a breath test. After completing the tests, Deputy Branham concluded that Newpher had not driven under the influence of alcohol and returned to his cruiser to issue a citation to him for the speeding violation and, because Newpher did not have a license in his possession, one for that offense also. Newpher had a passenger in his car, Nicholas Major, a friend, who was not wearing his seat belt. Deputy Branham decided not to issue Major a citation, but, instead, to give him an oral warning.

After checking with police communications and determining that Newpher did have a valid license and that the jeep was not stolen, he returned to Newpher's jeep with the completed citations in hand and explained to him about signing them and mailing in the traffic fines. Newpher signed both of them and received copies. Deputy Branham then asked Newpher if he had any guns or drugs in his car, and after receiving a negative reply, the following transpired according to Deputy Branham's testimony at the suppression hearing:

DEPUTY BRANHAM: ... I asked would he mind stepping out of the vehicle so I could search the vehicle, and he said, no. He turned to Mr. Major and he said, no.

PROSECUTOR: Who said no? Go ahead?

DEPUTY BRANHAM: Mr. Newpher.

Both Newpher and his passenger then got out and Deputy Branham, with their agreement, patted them both down and found nothing. He pointed them to a location where he wanted them to stand, searched the car, and found a small amount of marijuana in a "bulge" under the floor mat on the front passenger side. This led him to arrest Newpher's passenger, and then, when questioning Newpher, he learned that Newpher used marijuana on a regular basis, and so he arrested him as well. He gave Newpher his *Miranda* warning, and after other law enforcement officers arrived, conducted a further search of the car and found marijuana in a tackle box in the trunk. All of the events consumed more than an hour from start to finish on a cold and rainy evening, and were recorded on videotape from a camera positioned atop Deputy Branham's vehicle.

On October 7, 1997, the Circuit Court for Queen Anne's County (Sause, J.) held a hearing on motions filed by the defendant, one of which, the motion to suppress the fruits of the search of the automobile, the court denied and is the subject of this appeal. At that hearing, the court viewed the videotape and heard testimony only from Deputy Branham. At the close, Newpher argued that the search, after completing the ticketing and orally warning the passenger about the seat belt violation, constituted a second stop and needed to be justified by probable cause.

■ This Court has on several occasions issued opinions that condemn the delay of stopped motorists for the purpose of either searching their automobiles or gathering evidence during an unjustified delay. *See Whitehead v. State,* 116 Md.App. 497, 698 A.2d 1115 (1997); *Munafo v. State,* 105 Md.App. 662, 660 A.2d 1068 (1995); *Snow v. State,* 84 Md.App. 243, 578 A.2d 816 (1990). The Supreme Court has recently

spoken on the same issue. *See Knowles v. Iowa,* —— U.S. ——, 119 S.Ct. 484, —— L.Ed.2d —— (1998) (holding that a search, without consent or probable cause, of a car belonging to person given a citation for speeding, violates the Fourth Amendment). An unjustified delay, although subsequent to a proper detention for the violation of traffic laws, becomes a "second stop," and unless based upon some other proper constitutional ground, will result in the suppression of any evidence produced during the detention. *Munafo,* 105 Md. App. at 670, 660 A.2d 1068.

A pretext traffic stop that enables the arresting law enforcement officer to observe something that generates probable cause to search the driver of the car or its contents has been held by the Supreme Court not to violate the Fourth Amendment. *Whren v. U.S.,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The State here, however, does not maintain that the search was incident to probable cause. The State contends that a second stop did not occur because Newpher gave the sheriff permission to search the jeep.

The seminal case of *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), makes clear that it is constitutionally permissible to conduct a search without a warrant, as long as there is valid consent. 412 U.S. at 228, 93 S.Ct. 2041; *see also Dyson v. State,* 122 Md.App. 413, 712 A.2d 573, *cert. denied,* 351 Md. 287, 718 A.2d 235 (1998) (noting that an automobile may be searched without a warrant by virtue of the consent exception); *Wilkerson v. State,* 88 Md.App. 173, 594 A.2d 597 (1991) (holding that defendant's consent to search his automobile authorized police to search a jacket lying on the back seat). In order for consent to be constitutionally valid, it must conform to the standard set out in *Schneckloth,* in which the Court held that the question of whether consent to a search is in fact voluntary is a question of fact to be determined from the totality of all the circumstances. 412 U.S. at 227, 93 S.Ct. 2041. The Court also determined that the State is not required to demonstrate that the subject of the search had knowledge of a

right to refuse the search, although such knowledge is a factor that the court may take into account when making its determination on voluntariness. *Id.*

The *Schneckloth* Court instructs that the object of the inquiry is to determine the nature of a person's subjective understanding. 412 U.S. at 230, 93 S.Ct. 2041. The Court also noted that the prosecutor's burden to prove, by a preponderance of the evidence, that consent to search was given freely and voluntarily is already difficult to achieve without requiring the State to prove that the defendant knew about the right to refuse consent. *Id.* The Court found that placing this additional burden on the State would mean that a defendant could frustrate the introduction of evidence simply by saying that he did not realize that he had the right to refuse permission. *Id.* In sum, the Court stated, "neither this Court's prior cases, nor the traditional definition of 'voluntariness' requires proof of knowledge of a right to refuse as the *sine qua non* of an effective consent to a search." *Id.* at 234, 93 S.Ct. 2041 (footnote omitted).

Having said that, we now turn to the main issue in this case, which is whether Newpher validly consented to the search of his jeep, making the subsequent search by Deputy Branham constitutionally permissible. Our review of the facts at a suppression hearing is limited to those which are most favorable to the party that prevailed on the motion. *In re Tariq A–R–Y,* 347 Md. 484, 488, 701 A.2d 691 (1997); *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990). Moreover, in considering the evidence, we extend great deference to the fact-finding of the suppression hearing judge regarding the credibility of witnesses and the weighing of first-level facts. *Tariq A–R–Y,* 347 Md. at 488, 701 A.2d 691. We make our own independent review, however, of whether a search falls within the limitations of the Fourth Amendment. *Id.* at 489, 701 A.2d 691.

In reviewing the validity of the search of Newpher's jeep, the court below considered the videotape of the traffic stop and Deputy Branham's oral account of the events that

night.  Indeed, the part of the stop when Newpher allegedly consented to the search was not captured on the videotape because Newpher's response to Deputy Branham's request to search was made while Nepwher was inside his jeep.  The court looked at the totality of the circumstances surrounding the stop and found that Deputy Branham's account of what occurred inside the jeep when he asked for consent to search was undisputed, and that Deputy Branham handled the entire stop in a "businesslike way" that was not "overbearing" or "confrontational."

In conducting an independent review of the constitutionality of the search, we find that Newpher consented to the search of his jeep.  First of all, we defer to the court's assessment of Deputy Branham's testimony and demeanor in accordance with the standard of review outlined above.  *See Tariq A–R– Y,* 347 Md. at 489, 701 A.2d 691.  The court found that Deputy Branham handled the entire stop in a professional and polite manner.  In addition, it is undisputed that Deputy Branham asked Newpher if he would mind if he searched his jeep, to which Newpher replied, "no," and got out of the vehicle.  Finally, Newpher's knowledge that he had the right to refuse consent is merely a factor and not a prerequisite to valid consent.  Therefore, Deputy Branham was not required to inform Newpher of his right to refuse consent to a search when he asked for permission to search the jeep.  Additionally, we take into account that Newpher was somewhat familiar with the right to refuse consent because Deputy Branham had advised him earlier of his right to refuse to take a breath alcohol test.

Based on the foregoing, we agree with the trial court's determination that Newpher consented to the search, and conclude the search did not violate Newpher's constitutional rights.

**JUDGMENT AFFIRMED;  APPELLANT TO PAY COSTS.**