780 A.2d 1224

Curtis Eugene BYRD

v.

STATE of Maryland.

No. 2286, Sept. Term, 2000.

Court of Special Appeals of Maryland.

Sept. 11, 2001.

M. Gordon Tayback, Baltimore, for appellant.

Rachel Marblestone Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Davis R. Ruark, State's Atty. for Wicomico County, Salisbury, on the brief), for appellee.

Submitted before SONNER, CHARLES E. MOYLAN, JR., (Retired, specially assigned), and RAYMOND G. THIEME, JR., (Retired, specially assigned) JJ.

SONNER, Judge.

A jury in the Circuit Court for Wicomico County convicted Curtis Eugene Byrd of cocaine possession with the intent to distribute, and various lesser included offenses and traffic charges. The State's evidence included a large amount of money the police found and removed from Byrd's home, pursuant to a search warrant. During the time police sought the search warrant, they impounded his residence and allowed those present in it to leave, but prohibited new entries from the outside. Byrd argues that this was an unconstitutional seizure and tainted the warrant search that followed, and moved to suppress the search. Byrd also claims that the

evidence was insufficient to sustain the convictions. We disagree with both contentions.

## Factual Background

On April 12, 2000, at approximately 1:30 a.m., a Delmar police officer observed Byrd driving a car with a broken headlight. The officer followed him for a few blocks before activating his siren, but Byrd, rather than pulling over, accelerated and attempted to evade the stop. After Byrd lost control of the car and crashed it into a ditch, he fled on foot. The officer soon caught up with him, apprehended him, and recovered approximately 848 grams of crack cocaine, which he suspected Byrd had discarded as he attempted to flee.

The officer placed Byrd under arrest, while other officers prepared an affidavit to support a search of Byrd's home. The application for the warrant indicated the circumstances of Byrd's arrest and described police surveillance of suspected drug activities observed at his residence during the previous five months. The affidavit also detailed that Byrd's girlfriend, Kimya Lashay Washington, had visited him at the police station following his arrest earlier that day. Police later saw Washington's car parked in the driveway of Byrd's residence. Both Byrd's and Washington's criminal records included several drug-related arrests.

Fearing Washington might destroy whatever contraband was left in Byrd's house, the police impounded the home for three hours, while awaiting issuance of the warrant. The officers told Washington and another woman, who was inside the home, that they were applying for a search warrant and that, while the women were free to leave, new visitors would not be allowed to enter the house. During the search of the home, officers recovered over $29,000 in cash.

## Discussion

### I. Seizure of Byrd's Home

In reviewing the circuit court's denial of the motion to suppress, we examine only the record at the suppression

hearing.[1]  *Ferris v. State,* 355 Md. 356, 368, 735 A.2d 491
(1999).  We consider the evidence, and any inferences to be
drawn from it, in a light most favorable to the State, the
prevailing party on the motion.  *In Re Tariq A–R–Y,* 347 Md.
484, 488, 701 A.2d 691 (1997), *cert. denied,* 522 U.S. 1140, 118
S.Ct. 1105, 140 L.Ed.2d 158 (1998).  We also review the trial
court's factual findings against the clearly erroneous standard
of review, but will answer the ultimate question of whether the
seizure of Byrd's home was reasonable *de novo.  Ferris,* 355
Md. at 368, 735 A.2d 491; *In Re Tariq,* 347 Md. at 488–89, 701
A.2d 691.

■  In the recent case of *Illinois v. McArthur,* 531 U.S.
326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), the Supreme Court
upheld police action that prevented McArthur from entering
his home without a police escort during the two-hour time
they sought a search warrant.  In that case, the suspect's wife
had informed police that her husband was keeping drugs in
their house, an interchange that the suspect had opportunity
to observe.  Referencing other cases in which temporary
warrantless restraints were upheld to secure evidence, the
Court found the seizure reasonable because: (1) police had
probable cause to believe that the home contained contraband;
(2) exigent circumstances existed, in that, if unrestrained, the
suspect would likely destroy the drugs before police obtained
the warrant; (3) the officers "reconcile[d] their law enforce-
ment needs with the demands of personal privacy" by impos-
ing only a limited and tailored restraint, that is, they did not
search the home or arrest the suspect before the warrant

---

1.  The State argues preliminarily that Byrd's suppression argument is
not preserved for our review because, at the motions hearing, he
challenged only the factual allegation that police did not search the
home until the warrant arrived, not the legal argument that circum-
stances justified the impoundment.  There was testimony, however, as
to why the officers believed the impoundment was necessary, and the
State clearly argued to the court that probable cause and exigency
justified the police action.  Therefore, while Byrd may not have chal-
lenged the legality of the search for precisely the reason he presents on
appeal, the issue was presented to the court, and we are comfortable
addressing it.  *See* Md. Rule 8–131(a) (2001).

arrived; and (4) the seizure lasted for only two hours. *McArthur,* 121 S.Ct. at 950–51. Likewise, in *Segura v. United States,* 468 U.S. 796, 810, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), the Court, by an admittedly splintered opinion, provided "that securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." Thus, *McArthur* and *Segura* guide us to judge the reasonableness of an impoundment by the existence of probable cause, the presence of exigent circumstances, and the scope and duration of the seizure.

In this case, there was probable cause to believe that Byrd's home contained evidence of a crime. Indeed, the warrant judge, faced with the same information that the police had when they impounded the home, found probable cause and issued a search warrant. We grant great deference to the judge's finding of probable cause and will affirm that decision, as long as it was supported by "a substantial basis." *McDonald v. State,* 347 Md. 452, 467, 701 A.2d 675 (1997) (quoting *State v. Lee,* 330 Md. 320, 326, 624 A.2d 492 (1993)).

We also find that exigent circumstances justified the seizure. Washington's criminal record denoted a savvy appreciation for police procedure following drug arrests. It was reasonable to assume she likely understood a search of the home was imminent, and destroying any evidence would benefit Byrd. Her arrival at Byrd's home after learning of his drug arrest strengthened the probability that she meant to destroy contraband. Thus, rather than constituting "a mere presence" with only an opportunity to destroy evidence, *Stackhouse v. State,* 298 Md. 203, 217, 468 A.2d 333 (1983), Washington posed "a real threat" to the alleged drug proceeds, contraband, or other evidence lodged within the house. *Bellamy v. State,* 111 Md.App. 529, 536, 682 A.2d 1185 (1996). *See also United States v. Socey,* 846 F.2d 1439 (D.C.Cir.1988) (holding that "a police officer can show an objectively reasonable belief that contraband is being, or will be, destroyed within a home if

he can show 1) a reasonable belief that third persons are inside a private dwelling, and, 2) a reasonable belief that these third persons are aware of an investigatory stop or arrest of a confederate outside the premises so that they might see a need to destroy evidence."); *McMillian v. State*, 85 Md.App. 367, 379–80, 584 A.2d 88 (1991) (presence of exigency belied by police leaving the scene where destruction of evidence was supposedly taking place).

Finally, the seizure was reasonable because its scope and duration were limited. The occupants of Byrd's home were not restrained in any way, nor was the house searched before the warrant arrived. *See McArthur*, 121 S.Ct. at 950. Moreover, three hours was a reasonable amount of time for processing the search warrant. *See id.* 121 S.Ct. at 951 (upholding a two-hour impoundment); *Segura*, 468 U.S. at 801, 104 S.Ct. 3380 (upholding a nineteen-hour impoundment).

■■■ We also note that, even if the impoundment was unreasonable, it did not taint the subsequent warrant search. None of the information upon which the search warrant was secured derived from the impoundment of Byrd's home. Instead, "the information possessed by the [police] before they entered the [house] constituted an independent source for the discovery and seizure of the evidence now challenged." *Segura*, 468 U.S. at 814, 104 S.Ct. 3380; *see also State v. Klingenstein*, 92 Md.App. 325, 357–61, 608 A.2d 792 (1992), *rev'd in part on other grounds*, 330 Md. 402, 624 A.2d 532 (1993).

## II. Sufficiency of the Evidence

■■■ Defense counsel moved for a judgment of acquittal at the close of the State's evidence and then, again, at the close of all the evidence, in accordance with Maryland Rule 4–324. That rule, however, also requires the defendant to "state with particularity" why the motion should be granted. Md. Rule 4–324(a) (2000). Defense counsel merely asserted that the evidence was insufficient to send the case to the jury. Such a proffer is not particular and leaves the question of sufficiency unpreserved for our review. *Graham v. State*, 325 Md. 398,

416–17, 601 A.2d 131 (1992); *Veney v. State,* 130 Md.App. 135, 142, 744 A.2d 1094 (2000), *cert. denied,* 358 Md. 610, 751 A.2d 472 (2000); *Bates & Beharry v. State,* 127 Md.App. 678, 691–92, 736 A.2d 407 (1999).

**JUDGMENT AFFIRMED; APPELLANT TO PAY COSTS.**